NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3367
_____

FRANCENE TEARPOCK-MARTINI,
                                    Appellant

v.

SHICKSHINNY BOROUGH; JULE MOORE; MICHAEL STEEBER;
ROSALIE WHITEBREAD; JAMES WIDO
_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 3-12-cv-02223
District Judge: The Honorable James M. Munley

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 19, 2016

Before: SMITH, *Chief Judge,* McKEE, and SHWARTZ, *Circuit Judges*

(Filed:  January 4, 2017)
_____

OPINION*
_____


SMITH, *Chief Judge.*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Shickshinny Borough erected a sign (the "Church sign") on a right-of-way near Francene Tearpock-Martini's home. The sign states, "Bible Baptist Church Welcomes You!" It has images of a cross and a book (presumably the Bible) and an arrow pointing toward the Bible Baptist Church (the "Church") with the phrase "1 Block" written on the arrow. Tearpock-Martini alleges that the Borough's erection of this sign violates her rights under the Establishment Clause of the First Amendment to the United States Constitution. Tearpock-Martini argues that the Borough has endorsed the Church's religion by favoring the Church over all other entities that might or allegedly did seek to place a sign on rights-of-way in Shickshinny.

On July 22, 2016, the District Court, applying the endorsement and *Lemon* tests, granted summary judgment for the Borough. *See Tearpock-Martini v. Shickshinny Borough*, No. 3:12cv2223, 2016 WL 3959034 (M.D. Pa. July 22, 2016). The District Court held that Tearpock-Martini failed to show a violation of the Establishment Clause under the endorsement test because no reasonable jury could find that the Borough had favored the Church when making decisions on signs. *See id.* at *4. The District Court also held that Tearpock-Martini had not shown an Establishment Clause violation under the three-part *Lemon* test. *See id.* at *5. Because we agree that Tearpock-Martini failed to show that the Borough treated the Church with any favoritism, we will affirm.

2

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's disposition of a summary judgment motion de novo, applying the same standard as the District Court. *Doe v. Luzerne County*, 660 F.3d 169, 174 (3d Cir. 2011). "Under this standard, a court will 'grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). To show a genuine dispute of material fact, the nonmovant "must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [nonmovant]." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013) (quoting *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007)) (internal quotation marks omitted).

When evaluating whether a government entity violated the Establishment Clause outside the public education context, we use two tests: the endorsement test and the *Lemon* test. *See Modrovich v. Allegheny County*, 385 F.3d 397, 400–01 (3d Cir. 2004) (describing the endorsement test and the *Lemon* test).

Under the endorsement test, we must determine whether "under the totality of the circumstances, the challenged practice conveys a message favoring or disfavoring religion." *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 284 (3d Cir.

3

2011) (internal quotation mark omitted). "The relevant question under the endorsement test is 'whether a reasonable observer familiar with the history and context of the display would perceive the display as a government endorsement of religion.'" *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 175 (3d Cir. 2008) (quoting *Modrovich*, 385 F.3d at 401).

Tearpock-Martini argues that a reasonable observer would perceive the Borough's installation of the Church sign on the state right-of-way as an endorsement of religion because, excepting a sign to a Borough-owned boat launch, the Borough did not permit "signs of any kind within its borders" and "even refused to permit the U.S. Postal Service" to erect its own sign. Br. Appellant 3.[1] In light of the fact that it is undisputed that the right-of-way displayed signs with no religious content, Tearpock-Martini argues that the boat launch sign is different because it directs individuals "to a property owned by the Borough itself." Reply Br. Appellant 6; *see also* JA000097, JA000101 (describing boat launch sign). In addition to the boat launch sign, there is a sign for a Subway restaurant. Tearpock-Martini notes that the Subway sign was not placed with the approval of the Borough. These really seem like distinctions without a difference.

---

[1] *See also, e.g.*, Reply Br. Appellant 11 ("It is Shickshinny's favoritism of the Bible Baptist Church over all others who wish to erect signs which distinguishes this sign from the others to which Shickshinny refers.").

Tearpock-Martini attempts to manufacture the favoritism she needs to show an Establishment Clause violation by comparing the Church sign to a hypothetical post office sign that the Borough declined to erect.[2] There are two steps in the sign application process. First, an applicant must fill out a form and pay a twenty-five dollar fee. Then, the Town Council has to approve the application. The Borough's 30(b)(6) witness, Kathleen C. Llewellyn, stated that the post office sign was not approved for two reasons: First, she said that a motion "was made" to approve a post office sign, but "it wasn't seconded." JA000084. Second, she explained that the Post Office failed to apply: "I don't think the post office applied. I think it was -- somebody may have come -- they may have gone to Kevin Morris, who is the fire chief, and said, gee, you know, it would be helpful, you know, if we had signs up. And he may have brought it up that way without any formalities of, you know, applying for a permit. I don't know that." JA000086. Although Tearpock-Martini raises an issue of fact as to whether the Church actually paid the fee and therefore whether the Church complied with every step of the process, Tearpock-

---

[2] Tearpock-Martini also tries to compare the Church sign to her "protest sign," which she placed on the town right-of-way without permission. *See* Br. Appellant 19.

Martini raises no doubt that the Post Office—unlike the Church—failed to fill out the form.[3]

Tearpock-Martini failed to meet her burden to show a genuine issue of fact regarding whether the Post Office was similarly situated since she failed to produce evidence that shows why the Post Office sign was presented to the Council in the way it was and whether this was of any consequence. In other words, because Tearpock-Martini failed to meet her burden to show a genuine issue of fact regarding whether the Post Office or anyone else was similarly situated and treated worse than the Church, Tearpock-Martini has not shown that the Borough "sen[t] a message to nonadherents that they are outsiders, not full members of the political community," *Freethought Soc'y v. Chester County*, 334 F.3d 247, 260 (3d Cir. 2003) (quoting *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 773 (1995) (O'Connor, J., concurring in part and concurring in the judgment)) (internal quotation mark omitted); she has only shown that the Borough has not made its rights-of-way open to organizations that fail to comply with the application process.

Even though Tearpock-Martini did not make a *Lemon* test argument on appeal, we apply the *Lemon* test out of an abundance of caution as we have done in

---

[3] The boat launch sign was not approved through the normal application process. Instead, it was approved by motion at the request of the Mayor of Shickshinny.

our Establishment Clause cases, even while acknowledging that it may be unnecessary to continue to apply both.[4] Under the *Lemon* test, derived from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), a "challenged action is unconstitutional if (1) it lacks a secular purpose, (2) its primary effect is to either advance or inhibit religion, or (3) it fosters an excessive entanglement of government with religion." *Doe*, 653 F.3d at 283. As a matter of law on this record, none of those prongs show a violation in this case.

First, as the District Court held, the sign has a secular purpose: the sign would aid people in finding a local institution. *See Tearpock-Martini*, 2016 WL 3959034, at *5.[5]

Second, the primary effect prong is neither to advance nor inhibit religion. This Court has explained that the primary effect prong "is akin, if not identical, to

---

[4] *See, e.g.*, *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 282–83 (3d Cir. 2011) (noting that the *Lemon* test has been criticized and that we apply both tests); *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 174–75 (3d Cir. 2002) ("Recent Supreme Court decisions, however, have not applied the *Lemon* test. Instead, in cases involving Establishment Clause challenges to private individuals' use of government resources, the Court has applied the endorsement test . . . ."); *ACLU of N.J. v. Schundler*, 104 F.3d 1435, 1444 n.6 (3d Cir. 1997) ("[W]e merely reiterate that in Establishment Clause challenges to *religious displays*, the Supreme Court has emphasized that the endorsement test—a refinement of the 'effects' prong of *Lemon*—should be the focus of our analysis.").
[5] The Borough's (30)(b)(6) witness testified: "This directional sign came up because this church is out of the way. It's not on the main street." JA000115.

the endorsement test." *Doe*, 653 F.3d at 284. Because there was no endorsement, the primary effect of the sign is not to advance religion.

Finally, there is no excessive entanglement. This analysis can be redundant: "[T]he factors employed to assess whether an entanglement is excessive are similar to the factors . . . use[d] to examine effect." *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 534 (3d Cir. 2004) (second alteration in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 232 (1997)) (internal quotation marks omitted). Here, the most entanglement Tearpock-Martini can find is that the Borough installed the sign and, when it fell over, reinstalled it. That is not "entanglement," let alone "excessive" entanglement.

For the reasons set forth above, we will affirm the judgment of the District Court.